# EXHIBIT C



**Paul Piperato, County Clerk**
1 South Main St Ste 100
New City, NY  10956
(845) 638-5221

# Rockland County Clerk Recording Cover Sheet

Received From :
RIVERSIDE ABSTRACT LLC
3006 AVENUE M
STE 1C
BROOKLYN, NY  11210

Return To :
MARIANNA R KENNEDY ESQ
DRAKE LOEB HELLER KENNEDY GOGERTY
555 HUDSON VALLEY AVE   STE 100
NEW WINDSOR, NY  12553

**First GRANTOR**

152 BROADWAY HAVERSTRAW NY LLC

**First GRANTEE**

PROVIDENT BANK

Index Type : Land Records

Instr Number : 2009-00036488                    Orig Instr #: 2008-00042231

Book :                    Page :

Type of Instrument : Modification Agreement
Type of Transaction : Cema

Recording Fee :                    $180.50

Recording Pages :                    28

---

### Recorded Information

State of New York

County of Rockland

I hereby certify that the within and foregoing was
recorded in the Clerk's office for Rockland County,
New York

On (Recorded Date) : 10/07/2009

At (Recorded Time) : 11:45:56 AM

Doc ID - 019820290028

*Paul Piperato*

Paul Piperato, County Clerk



This sheet constitutes the Clerks endorsement required by Section 319 of Real Property Law of the State of New York

Entered By: PM  Printed On : 10/15/2009    At : 11:52:06AM



152 BROADWAY HAVERSTRAW NY LLC
(the "Mortgagor")

to

PROVIDENT BANK
(the "Mortgagee")

## MORTGAGE MODIFICATION AND EXTENSION AGREEMENT

| | |
|---|---|
| Dated: | September 17, 2009 |
| Location: | 152 Broadway, Haverstraw, NY 10927 |

| | |
|---|---|
| Section: | 27.5 |
| Block: | 2 |
| Lot: | 1 |
| Town: | Haverstraw |
| County: | Rockland |

### RECORD AND RETURN TO:

Marianna R. Kennedy, Esq.
Drake, Loeb, Heller, Kennedy, Gogerty, Gaba, & Rodd PLLC
555 Hudson Valley Avenue, Suite 100
New Windsor, NY 12553

CEMA - 26 +1



## MORTGAGE MODIFICATION AND EXTENSION AGREEMENT

**THIS AGREEMENT** made this 17th day of September, 2009 between **PROVIDENT BANK**, a savings association duly organized and existing under and pursuant to the laws of the United States of America, and having its principal place of business at 400 Rella Boulevard, P.O. Box 600, Montebello, New York 10901, (the "Mortgagee") and **152 BROADWAY HAVERSTRAW NY LLC**, a New York State limited liability company with an address at c/o Treff & Lowy PLLC, 342 Bedford Avenue, Brooklyn, New York 11211 (the "Mortgagor").

### WITNESSETH:

WHEREAS, the Mortgagee is the owner and holder for value of the following Mortgage, together with the notes or other evidences of indebtedness secured thereby, to wit:

a. Mortgage dated August 18, 2008 made by Mortgagor to Jay Kimmel, as nominee for Taron Partners LLC, in the principal sum of $5,000,000.00 and recorded on September 17, 2008 in the Rockland County Clerk's Office as Instrument Number 2008-42231, which Mortgage is being assigned to Mortgagee by Assignment of Mortgage dated September 17, 2009 and intended to be recorded simultaneously herewith. The principal sum now due and owing on such mortgage is $3,534,000.00. *2009-36469*

WHEREAS, the Mortgagor has executed and delivered to the Mortgagee its Amended and Restated Promissory Note in the principal sum of $3,534,000.00 which Note is secured by the mortgage referred to herein, with interest as stated in said Note and to be paid in accordance with said Note, and

WHEREAS, the Mortgagor and Mortgagee desire to modify the terms of the Mortgage, as aforesaid, so as to secure a first mortgage lien covering the premises herein described and securing payment of said principal indebtedness of $3,534,000.00 and the interest thereon, as aforesaid, and

WHEREAS, the Mortgagor and the Mortgagee further desire to modify the terms and conditions under which the Mortgage shall be held; and

WHEREAS, the mortgaged premises are more particularly described in Schedule "A" attached hereto and made a part hereof;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements of the parties, and for the purpose of carrying out the intention above expressed, the Mortgagee and the Mortgagor hereby mutually covenant and agree as follows:

The parties further agree as follows:

1




A. RESTATEMENT OF TERMS

The terms of the Mortgage are modified, changed and replaced by the following terms of this Agreement.

B. AMENDED AND RESTATED PROMISSORY NOTE

Simultaneously herewith, the Mortgagor shall make and execute an Amended and Restated Promissory Note in the principal amount of **THREE MILLION FIVE HUNDRED THIRTY FOUR THOUSAND AND NO/100 ($3,534,000.00) DOLLARS** to the Mortgagee.

C. TERMS OF MORTGAGES

**DEFINITION OF TERMS:**

(a) **"Mortgage"** shall mean this commercial mortgage and security agreement from Mortgagor to Mortgagee.

(b) **"Note"** shall mean the Amended and Restated Promissory Note dated September 17, 2009 from Mortgagor to Mortgagee in the amount of **THREE MILLION FIVE HUNDRED THIRTY FOUR THOUSAND AND NO/100 ($3,534,000.00) DOLLARS** together with all extensions, renewals, or modifications thereof, and secured by this Mortgage.

(c) **"Guarantor"** shall mean collectively Blue Beverage Group, Inc., Joseph Goldberger, Ryvkie Goldberger, and Aron Seidenfeld.

(d) **"Guaranty"** shall mean that certain Guaranty dated September 17, 2009 from Guarantor to Mortgagee.

(e) **"Loan Documents"** shall mean this Mortgage, the Note, the Guaranty and any other loan document signed by the Mortgagor in connection with this loan of **THREE MILLION FIVE HUNDRED THIRTY FOUR THOUSAND AND NO/100 ($3,534,000.00) DOLLARS** being made by the Mortgagee to Mortgagor and secured by this Mortgage.

(f) The **"Debt"** shall mean said indebtedness, interest and all other sums due hereunder and under the Note.

(g) The **"Premises"** shall mean the real property described in Schedule A.

(h) The **"Improvements"** shall mean buildings, structures, units, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter thereon

(i) The **"Mortgaged Property"** shall mean the Premises and the Improvements together with the property, rights and interests stated herein

**WITNESSETH:** To secure the payment of an indebtedness in the principal sum of **THREE MILLION FIVE HUNDRED THIRTY FOUR THOUSAND AND NO/100 ($3,534,000.00) DOLLARS**, lawful money of the United States of America, , which is the maximum principal amount, which is or under any contingency may be secured at the date of execution hereof or at anytime thereafter, to be paid with interest in accordance with the terms of the Note (said indebtedness, interest and all other sums due hereunder and under the Note being collectively called the "Debt"), Mortgagor has mortgaged, given, granted, bargained, sold, aliened, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated and by these presents does mortgage, give, grant, bargain, sell, alien, convey, confirm, pledge, assign and hypothecate unto Mortgagee the real property described in Schedule A attached hereto (the "Premises") and the buildings, structures, units, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (the "Improvements"):

2

(a) (the "Premises") and (the "Improvements") and all right, title and interest of the Mortgagor in and to all easements, rights of way, privileges, liberties, tenements, hereditaments, strips, gores, streets, alleys, passages, ways, waters, water-course, covenants, rights and appurtenances thereunto belonging or appertaining and all of the estate, right, title, interest, claim or demand whatsoever of mortgagor therein and in the streets and ways adjacent thereto, either in law or in equity, in possession or expectancy (collectively with the Premises, "Realty");

(b) all machinery, equipment, fixtures (including but not limited to all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) permits, licenses, and other property of every kind and nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now hereafter located upon the Mortgaged Premises and improvements on the Mortgaged Property (the "Equipment"), and the right, title and interest of Mortgagor in and to any of the equipment which may be subject to any security agreements (as defined in Subdivision (I)(L) of Section 9-105 of the Uniform Commercial Code of New York), superior in lien to the lien of this Mortgage. This Mortgage shall not cover fixtures that under the law are "consumer goods" and which the Mortgagor acquires more than ten (10) days after the date hereof, nor does it cover replacement of, or additions to, fixtures that under the law are "consumer goods" made more than ten (10) days after the date hereof;

(c) all awards or payments, including interest thereon, which may be made with respect to the Mortgaged Property, whether from the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right), or for any other injury to or decrease in the value of the Mortgaged Property;

(d) all leases and other agreements affecting the use or occupancy of the Mortgaged Property now or hereafter entered into (the "Leases") and the right to receive and apply the rents, issues and profits of the Mortgaged Property (the "Rents") to the payment of the Debt;

(e) all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(f) the right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property.

(g) all cash or other property to be received or held by Mortgagee under this mortgage for payment of taxes, insurance premiums or expenses of Restoration (as defined below) or as proceeds of insurance policies required by this mortgage, condemnation or the exercise of eminent domain; and

(h) all contract rights, general intangibles, actions and rights of action now existing or hereafter arising pertaining to the Mortgaged Property, including all Mortgagor's rights and interests in agreements now or in the future in existence providing for or relating to the construction, maintenance, operation or management of the Premises or any part hereof, including rights in the plans and specifications therefore; to the extent permitted by the relevant authorities all licenses, permits and approvals for the ownership, construction maintenance, operation, use and occupancy of the Premises; all Mortgagor's rights and interests in all warranties, guaranties, performance bonds, or surety bonds covering the obligation of contractors, subcontractors suppliers and manufacturers relating to Realty or any Improvement or equipment; and all insurance policies covering or affecting the Mortgaged Property or any part thereof.

AND Mortgagor covenants and warrants with Mortgagee that:

3




1. **PAYMENT OF DEBT**

Mortgagor will pay the Debt as hereinabove provided and timely comply with all terms and conditions contained herein and in the other Loan Documents. The Prepayment Provision in the Promissory Note provides the terms and conditions under which the Mortgagor may prepay Principal, including any applicable prepayment premium or fee, to the Mortgagee.

2. **MARKETABLE TITLE**

Mortgagor warrants good, marketable and insurable title in fee simple to the Premises, the Improvements and the Equipment, free and clear of all liens, claims and encumbrances; except such as are listed as exceptions to title in the title policy insuring the lien of the Mortgage; that it will own the Mortgaged Property free and clear of liens and claims except as otherwise provided in this Mortgage and the Note; and that this Mortgage is and will remain a valid and enforceable lien on the Mortgaged Property subject only to the exceptions referred to above. Mortgagor will preserve such title and will forever warrant and defend the same to the Mortgagee and will forever warrant and defend the forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever. Unless expressly provided otherwise, in the event the ownership of this Mortgage and title to the fee in the Mortgaged Property covered by this Mortgage are vested in the same person or entity, neither this Mortgage nor the Debt shall merge in said title, but shall continue to be and remain a valid first lien on the Mortgaged Property for the amount of the Debt.

3. **INSURANCE**

Mortgagor will keep the Improvements and the Equipment insured against loss or damage by fire with extended coverage, flood insurance, and such other hazards as Mortgagee shall from time to time require in amounts approved by Mortgagee, not exceeding in the aggregate 100% of the full insurable value of the Improvements and the Equipment, including coverage for loss of rents or business interruption, and naming Mortgagee, its successors and assigns as their interests may appear, as the first mortgagee under a standard mortgagee endorsement clause. All such policies shall be "All Risk" property insurance policies which shall be issued and all policies of insurance (the "Policies") shall be issued by an insurer acceptable to Mortgagee and shall contain the standard New York mortgagee clause endorsement naming Mortgagee as the person to which all payments made by such insurance company shall be paid. Mortgagor will assign and deliver the Policies to Mortgagee. Mortgagor will deliver to Mortgagee satisfactory evidence of the renewal of each of the Policies not later than fifteen (15) days prior to the expiration date of each of the policies. Sums paid to Mortgagee by any insurer may be retained and applied by Mortgagee toward payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper, or at the discretion of Mortgagee, the same may be paid, either in whole or in part, to Mortgagor for such purposes as Mortgagee shall designate. If Mortgagee shall receive and retain such insurance money, the lien of this Mortgage shall be reduced only by the amount thereof received after expenses of collection and retained by Mortgagee and actually applied by Mortgagee in reduction of the Debt. The provisions of Subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire shall not apply to the terms of this Mortgage. Without limiting the foregoing, all such policies shall have endorsed thereon, in form acceptable to Mortgagee, the standard non-contributing mortgagee clause, in the name of Mortgagee, and a waiver of subrogation endorsement. Each policy shall provide that it will not be canceled, amended or materially altered (including by reduction in the scope or limits of coverage) without at least thirty (30) days' prior written notice to Mortgagee. Duplicate original policies evidencing the insurance required by this Mortgage and any additional insurance which shall be taken out on the Mortgaged Property by or on behalf of Mortgagor shall be deposited with and held by Mortgagee. Mortgagor will deliver to Mortgagee (i) promptly upon receipt, receipts evidencing payment of all premiums thereon and (ii) at least thirty (30) days prior to



the expiration of each such policy, original certificates evidencing renewals of all such policies for not less than one year, with evidence satisfactory to Mortgagee of payment of all premiums thereon.

In addition, Mortgagor shall maintain (a) comprehensive general public liability insurance covering injury and damage to persons and property with limits acceptable to Mortgagee and naming Mortgagee, its successors and assigns as their interests may appear, as an additional insured; (b) insurance which complies with the workers' compensation and employers' liability laws of all states in which Mortgagor shall be required to maintain such insurance; (c) boiler insurance provided any of the buildings contain a boiler, and insurance against loss or damage from leakage of sprinkler systems in such amounts a Mortgagee shall from time to time reasonably require; and (d) such other insurance as Mortgagee may require from time to time in amounts and with carriers reasonably satisfactory to Mortgagee.

## 4.  TAXES

Mortgagor shall pay all taxes, assessments, water rates, sewer rents and other charges, now or hereafter levied or assessed against the Mortgaged Property (the "Taxes") as same become due and payable. Mortgagor will deliver to Mortgagee, upon request, evidence satisfactory to Mortgagee that the Taxes are not delinquent.

## 5.  ESCROW ACCOUNT

Mortgagor, in addition to the payments of principal and/or interest payable pursuant to the Note (the "Installments"), will pay to Mortgagee on each date and in the manner specified in the Note for payment of an Installment, an amount (the "Escrow Fund") (a) which would be sufficient to pay the Taxes payable, or estimated by Mortgagee to be payable, during the ensuing twelve (12) months, divided by the number of Installments due during such twelve (12) month period, and (b) an amount which, when divided by the number of Installments due from the date of any calculation hereunder until the expiration of the Policies, would be sufficient to pay the premiums due for the renewal of the coverage afforded by the policies upon the expiration thereof. Mortgagee will apply the Escrow Fund to payments required to be made by Mortgagor pursuant to paragraphs 3 and 4 hereof. If the amount of the Escrow Fund shall exceed the amounts due pursuant to paragraphs 3 and 4 hereof, Mortgagee shall, in its discretion, (1) return any excess to Mortgagor (2) credit such excess against the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper, or (3) credit such excess against future payments to be made to the Escrow Fund. In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property. If the Escrow Fund is not sufficient to pay the items set forth in (a) and (b) above, Mortgagor shall pay to Mortgagee, upon request, an amount which Mortgagee shall estimate as sufficient to make up the deficiency. Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional collateral security for the Debt and shall not bear interest. The Mortgagor shall pay for any fee incurred by the Mortgagee, should the Mortgagee engage a third party provider to service the tax and insurance escrow account.

## 6.  LATE CHARGES

If any payment  is not paid by the due date specified in the Note, Mortgagor shall pay to Mortgagee upon demand an amount equal to six (6%) percent of any such payment to defray the expense incurred by Mortgagee in handling and processing such delinquent payment, and such amount shall be deemed to be secured by this Mortgage.



## 7. CONDEMNATION

Notwithstanding any taking by any public or quasipublic authority through eminent domain or otherwise, the Debt shall not be reduced until any award or payment therefore shall have been actually received after expenses of collection and applied by Mortgagee to the discharge of the Debt. Mortgagee may apply any such award or payment to the discharge of the Debt whether or not then due and payable. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of such award or payment, Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive said award or payment, or a portion thereof sufficient to pay the Debt, whichever is less. Mortgagor shall file and prosecute its claim or claims for any such award or payment in good faith and with due diligence and cause the same to be collected and paid over to Mortgagee, and hereby irrevocably authorizes and empowers Mortgagee, in the name of Mortgagor or otherwise to collect and receipt for any such award or payment and to file and prosecute such claim or claims, and although it is hereby expressly agreed that the same shall not be necessary in any event, Mortgagor shall, upon demand of Mortgagee, make, execute and deliver any and all assignments and other instruments sufficient to assign to Mortgagee any such award or payment free and clear of any encumbrance of any kind or nature whatsoever.

## 8. RIGHT TO RENTAL PAYMENTS AND POSSESSION

Mortgagee has the right to enter the Mortgaged Property for the purpose of enforcing its interest set forth in this Mortgage. Nevertheless, subject to the terms of this Paragraph 8, Mortgagee waives the right to enter the Mortgaged Property for the purpose of collecting the Rents, and grants Mortgagor the right to collect the Rents. Mortgagor shall hold the Rents, or an amount sufficient to discharge all current sums due on the Debt, in trust for use in the payment of the Debt. The right of Mortgagor to collect the Rents may be revoked by Mortgagee upon any default by Mortgagor under the terms of this Mortgage by giving notice of such revocation to Mortgagor.

Following such notice Mortgagee may enter upon the Mortgaged Property, collect, retain and apply the Rents toward payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper. Mortgagor shall not, without the consent of Mortgagee, make, or suffer to be made, any Leases or cancel or modify any Leases or accept prepayments of Installments of Rent for a period of more than one (1) month in advance or further assign the whole or any part of the Rents without the consent of Mortgagee. No lease covering all or any part of the Mortgaged Property shall be valid or effective without prior written approval of Mortgagee. Mortgagee shall have all of the rights against Lessees of the Mortgaged Property as set forth in Section 291-F of the Real Property Law of New York. In respect of any Lease, Mortgagor will (a) fulfill or perform each and every provision thereof on its part to be fulfilled or performed; (b) promptly send copies of all notices of default which it shall send or receive thereunder to Mortgagee, and (c) enforce, short of termination thereof, the performance or observance of the provisions thereof. In addition to the rights which Mortgagee may have herein, in the event of any default under this Mortgage, Mortgagee, at its option, may require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be in possession of Mortgagor. Upon default in any such payment, Mortgagor will vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise. Nothing contained in this paragraph shall be deemed to impose on Mortgagee any of the obligations of the lessor under the Leases. Any lease (including any or all of the terms and conditions thereof) covering all or any part of the Mortgaged Property, shall be subject and subordinate to the lien of this Mortgage.




### 9. MAINTENANCE OF PROPERTY

Mortgagor shall cause the Mortgaged Property to be maintained in good condition and repair. In the event of the failure of the Mortgagor to maintain the Mortgaged Property within a period of 30 days after notice from the Mortgagee, and if the Mortgagor fails to proceed promptly after such notice to cure or remedy the same with due diligence, then, in any such case, the Mortgagee, in addition to any other remedies provided herein, at the expense of the Mortgagor may, from time to time, at its option, cure or remedy any such default of the Mortgagor and the Mortgagor hereby authorizes the Mortgagee to enter upon the Mortgaged Property as may be necessary for such purposes, and any costs thereof, including reasonable counsel fees, shall be secured by this Mortgage and shall be immediately due and payable to the Mortgagee.

The Improvements and the Equipment shall not be removed, demolished or materially altered except for normal replacement of the Equipment), without the consent of Mortgagee, except that the Mortgagor shall have the right, without such consent, to remove and dispose of, free from the lien of this Mortgage, such Equipment as from time to time may become worn out or obsolete provided that either (a) simultaneously with or prior to such removal, any such Equipment shall be replaced with other Equipment of a value at least equal to that of the replaced Equipment and free from any security agreement, and by such removal and replacement the Mortgagor shall be deemed to have subjected the Equipment to the lien of this Mortgage, or (b) any net cash proceeds received from such disposition shall be paid over promptly to the Mortgagee to be applied to the last installments due on the Debt secured, without any charge for prepayment. The Mortgagor will not permit any waste to the Mortgaged Property.

Mortgagor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged property, or the use thereof, and shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be damaged or destroyed by any casualty or which may be affected by any proceeding of the character referred to in paragraph 7 hereof and shall complete and pay for, within a reasonable time, any structure at any time in the process of construction or repair on the Premises. If such casualty shall be covered by the Policies, Mortgagor's obligation to repair, replace or rebuild such portion of the Mortgaged Property shall be contingent upon Mortgagee's paying Mortgagor the proceeds of the Policies, or such portion thereof as shall be sufficient to complete such repair, replacement or rebuilding, whichever is less. Mortgagor will not, without the prior consent of Mortgagee, initiate, join in or consent to any private restrictive covenant, zoning ordinance or other public or private restrictions, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof.

### 10. INSPECTION

Mortgagee and its agent shall have the right to enter and inspect the Mortgaged Property at all reasonable times.

### 11. MORTGAGEE'S RIGHTS IF PROPERTY IS SOLD OR TRANSFERRED

The Debt shall, at the option of Mortgagee, become immediately due and payable in the event that Mortgagor shall, without the prior written approval of Mortgagee (a) further encumber the Mortgaged Property with any lien imposed in connection with any other financing, or (b) permit the Mortgaged Property or any part thereof or any interest therein to be sold, transferred or conveyed to any other person or entity, or (c) sell, transfer or convey the Mortgaged Property or any part thereof or any interest therein, which shall include but not be limited to, where Mortgagor is a corporation (i) the sale or transfer of more than forty-nine (49%) percent of the outstanding shares of the corporation, or (ii) the dilution of the present stockholding or corporate control by issuance of new or treasury stock or by

7




conversion of any non-voting stock or other securities to voting stock, or, where Mortgagor is a partnership, the withdrawal, except by death, resignation or retirement, of any general partner, or the appointment of any new or other, or substitute general partners, or where Mortgagor is a Limited Liability Company, the withdrawal, resignation or retirement of any member, or the appointment of any new or other, or substitute members, or the transfer of any membership interest. The provisions of this paragraph shall apply to each and every further encumbrance, sale, transfer or conveyance, regardless of whether or not Mortgagee has consented to, or waived by its action or inaction hereunder, any previous encumbrance, sale, transfer or conveyance.

12. **ENVIRONMENTAL COVENANTS**
    (a) The subject property and the proposed use thereof complies with all federal, state and other laws and regulations concerning environmental hazards, and the mortgagor agrees to comply with all such laws and regulations as they may be amended from time to time.
    (b) The property is free of environmental liens and that there are no pending investigations, injunctions, clean-up orders, consent decrees, litigation, enforcement proceedings or other contingent liabilities affecting the property and the mortgagor agrees to immediately comply with any of the foregoing should they arise in the future.
    (c) The property is free of hazardous contamination or releases of "hazardous substances" (as that term is defined in the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601). Should any such hazardous contamination or release of hazardous substances be discovered in the future, the mortgagor agrees to immediately remove them or cure any violation in connection therewith so that the property complies with all such laws and regulations as amended from time to time.
    (d) The Mortgagor shall give immediate notice to the Mortgagee of any environmental liens, pending investigations, injunctions, clean-up orders, consent decrees, litigation, enforcement proceedings or other proceedings concerning the property, and the mortgagor hereby agrees to indemnify and hold the Mortgagee harmless from any loss or liability, including reasonable attorneys' fees, in connection with the foregoing.
    (e) A violation of any of the provisions contained in this covenant shall also be deemed to be a default in the terms of this Mortgage.
    (f) In the event that a violation occurs, the Mortgagee shall have the option (but not the obligation) to cure the violation, and the mortgagor agrees to reimburse all costs thereof, together with interest at the rate set forth in the Note to the Mortgagee and secured by the Mortgage. If this is a building loan Mortgage, the parties agree that unexpended funds maybe used to pay the costs enumerated above.
    (g) The Mortgagor hereby understands and agrees that compliance with the Mortgagor with the covenants contained in this provision is of the highest priority to all who are or may be concerned with property, and the Mortgagor agrees to strict compliance with the provisions hereof.
    (h) Within ten (10) days after an environmental lien is filed, Mortgagor shall furnish a surety bond to the Mortgagee in an amount satisfactory to the Mortgagee to guarantee **first** lien status to the Mortgagee. Failure to furnish such surety bond within said time shall, at the option of the Mortgagee, be a default in the terms of this Mortgage.

13. **SECURITY AGREEMENT**
    This Mortgage is both a Real Property Mortgage and a Security Agreement. The Mortgaged Property includes both real and personal property and all other rights and interest, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property as set forth herein. Mortgagor shall, at the request of Mortgagee, deliver to Mortgagee any and all further instruments which Mortgagee shall require in order to further secure and perfect the lien of this Mortgage. Mortgagee is authorized to file financing

8




statements, as required by the Uniform Commercial Code, to perfect its lien against the foregoing types of personal property without first obtaining the signature of Mortgagor on the financing statements. Mortgagee is further empowered to file such financing statements without such signature of Mortgagor. (Said portion of the Mortgaged Property subject to the Uniform Commercial Code being called herein in the "Collateral".) If a default shall occur, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including legal expenses and attorney's fees, incurred or paid by Mortgagee in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

## 14. FINANCING STATEMENTS

Mortgagee may file without Mortgagor's signature any financing or continuation statement covering Mortgaged Property.

## 15. PRESERVATION OF LIEN

Mortgagor shall preserve its title to the Mortgaged Property and the validity, enforceability and first priority of the lien and security interest granted hereby in the Mortgaged Property, and Mortgagor shall forever warrant and defend the same to Mortgagee against the claims of all persons and parties whomsoever. Mortgagor shall do the following in furtherance of such obligation:

(a) Mortgagor (i) shall cause the lien of this Mortgage to remain a valid first mortgage lien upon the Mortgaged Property; (ii) shall cause the security interests created by this Mortgage to remain first priority security interests; (iii) shall not at any time create or allow to accrue or exist any Debt, lien, security interest or charge which would be prior to or on a par with the lien of this Mortgage or a security interest created by it upon any part of the Mortgaged Property; and (iv) shall not cause or permit the lien of this Mortgage to be diminished or impaired in any way. If any lien or security interest becomes attached to any Mortgaged Property, Mortgagor will cause it to be discharged and released as soon as practicable, and in any event within thirty (30) days.

(b) Mortgagor will pay, bond or otherwise discharge, from time to time when they shall become due, all lawful claims and demands of mechanics, material-men, laborers and others which, if unpaid, might result in, or permit the creation of, a lien.

(c) If the validity or priority of the lien or a security interest, created by this Mortgage or if the title or any of the rights of Mortgagor or Mortgagee in or to the Mortgaged Property, shall be endangered or questioned, or shall be attacked directly or indirectly, or if any action or proceeding is instituted against Mortgagor or Mortgagee with respect thereto, Mortgagor will promptly notify Mortgagee thereof and will diligently endeavor to cure any defect which may develop or be claimed, and will take all necessary and proper steps for the defense of such action or proceeding, including the employment of counsel, the prosecution or defense of litigation and, subject to Mortgagee's approval, the compromise, release or discharge of any and all adverse claims.

9

(d)  To the extent, in the manner and places and within such times required by law or deemed appropriate by Mortgagee in order to perfect and maintain the validity, effectiveness and priority of the liens, security interests and assignments intended to be created by the Loan Documents or to subject after-acquired property of Mortgagor or proceeds thereof to such liens, security interests and assignments, or to otherwise carry out the intent of the Loan Documents, Mortgagor will, at the request of Mortgagee do the following:  (i)  promptly record and re-record, file and re-file and register and re-register appropriate Loan documents, any financing or continuation statement or amendment and every other instrument in addition or supplemental to any thereof, and promptly furnish to Mortgagee evidence satisfactory to it of every such recording, filing or registration; and (ii) promptly do, execute, acknowledge and deliver any further acts, deeds, conveyances, mortgages, deeds of trust, assignments, estoppel certificates, notices of assignment, transfers, certificates, assurances and other instruments and correct any defect, error or omission which may be discovered in the contents of any of the Loan Documents or in the execution, acknowledgment or recordation thereof.

16.  **NEW YORK LIEN LAW**
Pursuant to Section 13 of the Lien Law of New York, Mortgagor shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of such costs of any such improvements on the Mortgaged Property before using any part of the total of the same for any other purpose. The Mortgagor will indemnify and hold Mortgagee harmless against any loss or liability, cost of expense, including, without limitation, any judgments, attorney's fees, costs of appeal bonds and printing costs, arising out of or relating to any proceeding instituted by any claimant alleging a violation by Mortgagee of any applicable lien law, including, without limitation, any section of Article 3-A of the New York Lien Law.

17.  **PRESERVATION OF LEGAL STATUS**
Mortgagor will not, without Mortgagee's consent:
(a)  initiate or support any zoning reclassification of the Mortgaged Property, seek any variance under existing zoning ordinances applicable to the Mortgaged Property or use or permit the use of the Mortgaged Property in a manner which would result in such use becoming a non-conforming use under applicable zoning ordinances;
(b)  impose, or permit to be imposed, any restrictive covenants or encumbrances upon the Mortgaged Property, execute or file any subdivision plat affecting the Mortgaged Property or consent to the annexation of the Mortgaged Property to any municipality; or
(c)  permit or suffer the Mortgaged Property to be used by the public or any person in such manner as might make possible a claim of adverse usage or possession or of any implied dedication or easement.

18.  **USE OF MORTGAGED PROPERTY**
(a)  Mortgagor will observe and comply with, and cause the Mortgaged Property to be maintained, used and operated, in accordance with: (i) all laws, regulations, ordinances, rules, and orders (including without limitation those relating to zoning, land use, environmental protection, air, water and land pollution, health, safety, morals, equal opportunity, minimum wages, and employment practices) of any governmental authority applicable to the Mortgaged Property or to Mortgagor as owner of that property; (ii) applicable orders, rules and regulations of any regulatory, licensing, accrediting, insurance underwriting or rating organization or other body exercising similar functions; and (iii) all duties or obligations of any kind imposed in connection with any Permitted Encumbrance.

(b)  Mortgaged Property shall be kept free of hazardous substances, and shall not be used in any manner to generate hazardous substances.

(c)  Mortgagor will not use or occupy or permit the Mortgaged Property to be used or occupied in any manner which constitutes a public or private nuisance or which makes void, voidable or cancelable, or increases the premium of, any insurance then in force with respect thereto. Mortgagor shall not permit any portion of the Mortgaged Property to be used by any person or entity having diplomatic immunity, without the prior written consent of Mortgagee which may be withheld in its sole and absolute discretion.

**19.  PROTECTION OF LIEN**
If any of the events described in paragraph 17(c) above shall occur, Mortgagee (whether or not named as a party to such actions or proceedings) is hereby authorized and empowered to take such steps, in addition to those taken by Mortgagor, as it may deem necessary or proper for the defense of any such action or proceeding or the protection of the lien, security interest, validity or priority of the Mortgage or Assignments or of such title or rights, including the employment of counsel, the prosecution or defense of litigation, the compromise, release or discharge of such adverse claims, the purchase of any tax title and the removal of prior liens and security interests.

**20.  RIGHTS OF MORTGAGEE**
Mortgagee shall have the right to appear and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its discretion, feels should be brought to protect its interest in the Mortgaged Property.

**21.  BOOKS AND RECORDS**
Mortgagor and Guarantors, if any, will keep adequate books and records of accounts in accordance with generally accepted accounting practices consistently applied, and furnish Mortgagee with financial statements and other information concerning the affairs of Mortgagor, or any affiliate of Mortgagor, or any Guarantors hereof, as Mortgagee may reasonably request including a fully itemized statement of profit and loss and of surplus and a balance sheet. The Mortgagor will furnish to the Mortgagee, within fifteen (15) days after mailing to the Mortgagee of a written request therefore, a detailed statement in writing, duly sworn, and covering the period of time specified in such request, showing all income derived from the operation of the Mortgaged Property and all disbursements made in connection therewith, and containing a list of the names of all tenants of the Mortgaged Property and occupants other than those claiming possession through such tenants, the portion or portions of the Mortgaged Property occupied by such tenant and occupant, the rent and other charges payable under the terms of their leases or other agreements, and the periods covered by such leases or other agreements.

**22.  STRICT PERFORMANCE**
Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

**23.  DEBT BECOMES DUE**
The Debt shall become due at the option of Mortgagee upon any one or more of the following events ("Events of Default"):
(a)  if any installment is not paid within thirty (30) days;
(b)  if any of the Taxes are not paid when the same is due and payable;

11




(c)   if the Policies are not kept in full force and effect, or if the Policies are not assigned and delivered to Mortgagee upon request and such default shall have continue for a period of fifteen (15) days from the date after written notice shall have been given to the Mortgagor by the Mortgagee;

(d)   if Mortgagor does not furnish a statement, in the manner provided herein, of the amount of the Debt and the offsets or defenses thereto, if any and such default shall have continue for a period of fifteen (15) days from the date after written notice shall have been given to the Mortgagor by the Mortgagee;

(e)   if without the consent of Mortgagee the Mortgaged Property is in any manner transferred, except by operation of law, or further encumbered or if any Improvement or the Equipment (except for normal replacement of the Equipment) is removed, demolished or materially altered, or if the Mortgaged Property is not kept in good condition and repair;

(f)   if any Leases are made, canceled or modified in any material respect, or if any of the Rents is prepaid for a period of more than one (1) month in advance, or if any of the Rents is assigned, or any new lease made, without the consent of Mortgagee;

(g)   if any representation, covenant or warranty of Mortgagor, or of a Guarantor guaranteeing payment of the Note or any portion thereof or performance by Mortgagor of any of the terms of this Mortgage made herein or in any such guaranty, or in any certificate, report, financial statement or other instrument furnished in connection with the making of the Note, this Mortgage, or any such guaranty, shall prove false or misleading in any material respect;

(h)   if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors;

(i)   if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to the Federal Bankruptcy Act, or any similar Federal or State statute, shall be filed by or against Mortgagor or any Guarantor or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor shall be instituted and, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within sixty (60) days.

(j)   if Mortgagor does not reimburse Mortgagee upon demand for all expenses incurred by Mortgagee in remedying any default of Mortgagor hereunder or in appearing in, defending, or bringing any action or proceeding to protect Mortgagee's interest in the Mortgaged Property, including reasonable attorney's fees, with interest as provided herein and such default shall have continue for a period of fifteen (15) days from the date after written notice shall have been given to the Mortgagor by the Mortgagee;

(k)   if, after a default thereunder, Mortgagee shall elect to enforce its rights under the (Note or any instrument which may be held by Mortgagee as additional security for the Debt;

(l)   if Mortgagor shall be in default under any mortgage covering any part of the Mortgaged Property whether it be superior or inferior in lien to this Mortgage;

(m)   if the Mortgaged Property shall become subject (i) to any tax lien which is superior to the lien of this Mortgage, other than a lien for local real estate taxes and assessments not due and payable, or (ii) to any mechanic's materialman's or other lien which is or is asserted to be superior to the lien of this Mortgage and such lien shall remain undischarged for thirty (30) days;

(n)   in the event there is a judgment in excess of $25,000.00 outstanding against the Mortgagor and the same remains unsatisfied for a period of thirty (30) days, if same is not appealed, bonded or otherwise contested by Mortgagor;

(o)   upon the death of the Mortgagor, and/or any of the individual Guarantors of any of the obligations, if applicable;

12



(p)  in the event the Mortgagor fails to keep any other promise or covenant contained in this Mortgage, or in the Note which accompanies this Mortgage and such default shall have continue for a period of fifteen (15) days from the date after written notice shall have been given to the Mortgagor by the Mortgagee;

(q)  if Mortgagor fails to establish and/or maintain an operating account with the Mortgagee from which monthly payments may be deducted;

(r)  if Mortgagor fails to comply with any rule, regulation or requirement of any governmental body, agency, board or other authority which licenses, regulates or otherwise oversees the business activities of the Mortgagor, or

(s)  if the Mortgagor shall fail to provide the Mortgagee with a copy of any written notice from any such governmental body, agency, board or other authority which licenses, regulates or otherwise oversees the business activities of the Mortgagor, of the Mortgagor's failure to comply with any rule, regulation or requirement, within 48 hours of Mortgagor's receipt of such notice.

24.  **INTEREST RATE INCREASE IN THE EVENT OF DEFAULT**

In the event of a default with respect to any of the terms and conditions of this Mortgage, or the Note which accompanies it, the interest rate of the obligation which shall be in effect at the time of the default, shall be increased by five (5%) percent per annum from the date of default without the mortgagee being obligated to give any notice of said increase. In the event that the Mortgagor shall not pay the entire obligation by the maturity date, the interest rate in effect on the maturity date shall be increased to the greater of the following:

(a)  the interest rate shall be increased by five (5%) percent per annum, or
(b)  the interest rate shall be increased to Provident Bank's Prime Rate, plus two (2%) percent per annum; said prime rate to be subject to change on a monthly basis.

PROVIDENT BANK "Prime Rate" is the rate established from time to time by the lender at its main office as the Prime Lending Rate for domestic commercial loans, and which rate shall change when and as said Prime Lending Rate shall change, such interest to be payable on the first day of each month. The Prime Lending Rate in effect upon the date of this Mortgage and accompanying Note is 3.25% per annum. In the event that the term "Prime Rate" should cease to be used as a relevant term with respect to interest rates, the Mortgagee shall select a comparable index which shall be determined solely at the option of the Mortgagee. The Prime Rate is merely a pricing index. It is not intended, and the Mortgagor should not consider it to represent the lowest or the best interest rate that the Mortgagee charges to any Mortgagor. It is understood that the increase in the rate cannot exceed the highest rate allowable by law. This charge shall be reduced to comply and be in accordance with the maximum rate allowed by law to be charged by the Mortgagee for each payment if it exceeds such rate at any time. Such increase in the interest rate shall not be deemed an extension of any due date hereunder or a waiver by the Mortgagee of its right to enforce collection or pursue its remedies. The Mortgagor acknowledges that (i) such additional rate is a material inducement to the Mortgagee to make the loan; (ii) the Mortgagee would not have made the loan in the absence of the agreement of the Mortgagor to pay such additional rate; (iii) such additional rate represents compensation for increased risk to the Mortgagee that the loan will not be repaid; and (iv) such rate is not a penalty and represents a reasonable estimate of the cost to the Mortgagee in allocating resources (both personal and financial) to the on-going review, monitoring, administration and collection of the loan and compensation to the Mortgagee for losses that are difficult to ascertain.

13

 

**25.** **CURE OF DEFAULTS**
If Mortgagor shall default in any of its obligations hereunder to pay any amount or to perform any action, including, but not limited to, its obligation to pay Taxes and to procure, maintain and pay premiums on, the Policies referred to herein, then Mortgagee shall have the right, but not the obligation, in Mortgagor's name or in its own name, and without notice to Mortgagor, to advance all or any part of such amounts or to perform any or all such actions. In furtherance thereof, Mortgagee may, without prejudice to its other rights hereunder, enter upon and take possession of the Mortgaged Property to such extent and as often as Mortgagee may deem necessary or desirable to prevent or remedy any such default. Mortgagee, upon making any payment that Mortgagor was required by this Mortgage to make, shall be subrogated to all of the rights of the person receiving such advance payment. No such advance or performance shall be deemed to have cured such default by Mortgagor or any Event of Default with respect thereto.

**26.** **MORTGAGEE'S RIGHTS**
If Mortgagor should fail to make any payment or to do any act as herein provided, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof, Mortgagee being authorized to enter upon the Mortgaged Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, the cost and expense thereof (including reasonable attorney's fees to the extent permitted by law), with interest as provided in this paragraph, shall be due upon demand from Mortgagee to Mortgagor. All such costs and expenses incurred by Mortgagee in remedying such default or in appearing in, defending, or bringing any such action or proceeding shall be paid to Mortgagee upon demand, with interest as set forth in said Note which accompanies this Mortgage, but not more than the maximum interest rate which Mortgagor may by law pay, for the period after notice from Mortgagee that such costs or expenses were incurred to the date of payment to Mortgagee. All such costs and expenses incurred by Mortgagee pursuant to the terms of this Mortgage, with interest, shall be deemed to be secured by this Mortgage.

**27.** **FORECLOSURE**
If this Mortgage is foreclosed, the Mortgaged Property, or any interest therein, may at the discretion of Mortgagee, be sold in one or more parcels or in several interests or portions and in any order or manner.

**28.** **APPOINTMENT OF RECEIVER**
The holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver, custodian, trustee, liquidator or conservator without notice.

**29.** **CERTAIN RIGHTS PERTAINING TO SALES**
The following shall apply to any sale of any Mortgaged Property pursuant to Section 27 of the Mortgage.
(a) Mortgagee may conduct any number of sales from time to time. A Power of sale shall not be exhausted by any one or more such sales as to any part of the Mortgaged Property which shall not have been sold, nor by any sale which is not completed or is defective in Mortgagee's opinion, until Debt shall have been paid in full.
(b) Mortgagee may adjourn any sale from time to time by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at such adjourned time and place.

14



(c) At any such sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefore may make settlement for the purchase price by crediting the Debt with the sales price less the expense of the sale and the costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage.

(d) Under the completion of any such sale, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument or instruments, conveying, assigning and transferring all estate, right title and interest in and to the property and rights sold and shall receive the proceeds of such sale or sales and apply the same as herein provided. Mortgagee is hereby appointed the true, lawful and irrevocable attorney-in-fact of Mortgagor, which appointment shall be deemed to be coupled with an interest and is irrevocable and shall survive the death or disability of Mortgagor, in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the property and rights so sold and for that purpose Mortgagee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power. Mortgagor hereby ratifies and confirms all that such attorney-in-fact or such substitute or substitutes may lawfully do by virtue hereof. Nevertheless, Mortgagor agrees to execute, acknowledge and deliver to Mortgagee or to such purchaser or purchasers all such instruments as Mortgagee may deem appropriate to evidence, confirm and ratify such sale or sales.

(e) Any such sale shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof by, through or under Mortgagor. Upon any such sale, all right, title and interest of Mortgagor in and to such insurance policies then in force with respect to the Mortgaged Property foreclosed upon or so transferred, and all proceeds payable thereunder and unearned premiums thereon shall immediately vest in the purchaser or other transferee of such Mortgaged Property.

## 30. SUBROGATION

To the extent that proceeds of the Debt are used to pay indebtedness secured by any then outstanding lien, security interest, charge or encumbrance against the Mortgaged Property, such proceeds shall be deemed to have been advanced by Mortgagee at Mortgagor's request and Mortgagee shall be subrogated to any and all rights, security interests and liens owned by any owner or holder of such outstanding liens, security interests, charges or encumbrances, irrespective or whether said liens, security interests, charges or encumbrances shall have been released. In consideration of the payment of such indebtedness by Mortgagee, Mortgagor hereby waives and releases all demands and causes of action for offsets, payments and rentals to, upon and in connection with such indebtedness.

## 31. STRICT PERFORMANCE OF TERMS

The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (i) failure of Mortgagee to comply with any request of Mortgagor or the Guarantors to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note, (ii) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or (iii) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note or this Mortgage. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Debt, or any

15



portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

**32.  STATEMENT OF AMOUNT DUE AND OF NO DEFENSE**

After request by Mortgagee, Mortgagor, within five (5) days and at its expense, will furnish Mortgagee with a statement, duly acknowledged and certified, setting forth the amount of the Debt, the offsets or defenses thereto, if any, and that the Note and this Mortgage have not been modified, or if modified, giving particulars of such modification.

**33.  ADMINISTRATION, COLLECTION AND OTHER EXPENSES**

(a) Mortgagor will on demand pay or reimburse Mortgagee for the payment of any reasonable costs or expenses (including attorneys fees and disbursements) which are incurred or expended in connection with or incidental to (i) the preparation, execution, delivery, filing, recording, amendment or modification of this Mortgage, the agreement to any waiver of any term under it, the release or substitution of any Mortgaged Property, or any other aspect of the administration of this Mortgage; (ii) any change in law affecting this Mortgage or the Mortgaged Property (iii) any default or Event of Default by Mortgagor under this Mortgage or any of the other Loan Documents (as defined in Loan Agreement), (iv) Mortgagees' exercising its right to cure any default of Mortgagor under this Mortgage, (v) Mortgagee's exercise of its right to act to protect the lien of this Mortgage, or (vi) the enforcement, defense or maintenance of any of its rights or remedies or Mortgagor's obligations under this Mortgage or any of the Loan Documents by litigation or otherwise.

(b) All sums so advanced and all expenses incurred by Mortgagee hereunder or under applicable law shall be deemed obligations owing by Mortgagor to Mortgagee and shall bear interest, from the date paid or incurred until paid, at a rate which is five (5%) percent per annum higher than the interest rate of the obligation which is in effect at the time of the payment.

**34.  INCIDENTAL EXPENSES AND TAXES**

Mortgagor will promptly pay all income, franchise and other taxes owing by Mortgagor, and any stamp taxes which may be required to be paid in connection with the Debt or this Mortgage together with any interest or penalties thereon, and Mortgagor will pay any and all taxes, charges, filing, registration and recording fees, excises and levies imposed upon Mortgagee by reason of execution of this Mortgage or any Loan Document or ownership of this Mortgage or any Mortgage supplemental hereto, any security instrument with respect to any Mortgaged Property or any instrument of further assurance.

**35.  LAW ENACTING NEW TAX**

If any law or ordinance is enacted or adopted which imposes a tax, either directly or indirectly, on the Note, the Debt or this Mortgage, Mortgagor will pay such tax, with interest and penalties thereon, if any. In the event Mortgagee be advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or unenforceable or provide the basis for a defense of usury then, and in that event, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

16



**36.  REVENUE STAMPS**
If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same Mortgagor will pay for the same, with interest and penalties thereon, if any.

**37.  WAIVER OF RIGHTS AND DEFENSES**
To the full extent Mortgagor may do so, Mortgagor agrees for itself and as to its heirs, devisee, representatives, successors and assigns, and for any and all persons ever claiming an interest in the Mortgaged Property, to the following with respect to rights of Mortgagee under this Mortgage or any Loan Document:

(a) Mortgagor will not at any time insist on, plead, claim or take the benefit or advantage of any statute or rule of law now or hereafter in force providing for any appraisement, valuation, stay, extension, moratorium or redemption, or of any statute of limitations.

(b) Mortgagor hereby waives and releases all rights of redemption, valuation, appraisement, notice of intention to mature or declare due the whole of the Debt (except as otherwise provided herein), and all rights to a marshaling of the assets of Mortgagor, to a sale of the Mortgaged Property without any prior or different resort for collection, or to a sale in inverse order of alienation, or to the payment of the Debt out of the proceeds of sale of the Mortgaged Property in preference to any other person.

(c) Mortgagor shall not have or assert any right under any statute or rule of law pertaining to any of the matters set forth in this paragraph, to the administration of estates of decedents or to any other matters whatsoever to defeat, reduce or affect any of the rights or remedies of Mortgagee hereunder.

**38.  MONETARY DAMAGES RESTRICTED**
(a) the event that a claim or adjudication is made that Mortgagee has acted unreasonably or unreasonably delayed acting in any case where by law or under this Mortgage or any of the other Loan Documents it has an obligation to act reasonably or promptly, Mortgagee shall not be liable for any monetary damages, and Mortgagor's remedies shall be limited to injunctive relief or declaratory judgment.

(b) Mortgagee and its directors, officers, attorneys, agents and employees shall not be liable to Mortgagor for any loss or damage caused by any act or omission on the part of any of them unless such loss or damage shall have been caused by the gross negligence or willful misconduct of such person and unless such loss or damage shall have been the direct, immediate and necessary result of omission.

**39.  LAW THAT GOVERNS**
The terms of the Note and this Mortgage shall be construed by the laws of the State of New York, except as herein expressly provided to the contrary.

**40.  JURISDICTION AND VENUE**
Any dispute which may arise in connection with this Mortgage, any amendment of it, or any of the other Loan Documents, may be resolved by the courts of the State of New York located in Rockland County, or by the United States District court for the Southern district of New York. Mortgagor hereby irrevocably submits to, and gives up any objection to, the exercise of jurisdiction by any of those courts. Mortgagor admits that any dispute with Mortgagee may be resolved at least as conveniently in such a court as in any other court. Mortgagor will not seek dismissal of a proceeding, or ask to move it

17



to another court on the ground that resolution of the dispute in any of these courts is not convenient or in the interests of justice. Mortgagor shall not seek a jury trial in any action based upon or arising out of this Mortgage or any related document or agreement. Mortgagor will not seek to consolidate any such action with any other action in which trial by jury has not been waived.

**41.    INVALID TERM OF MORTGAGE**
If any term, covenant or condition of this Mortgage or the Note shall be held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

**42.    OBLIGATION OF PERSONS**
If Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.

**43.    EXECUTION OF MORTGAGE**
This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed lo constitute but one and the same instrument.

**44.    MORTGAGOR'S POWER TO EXECUTE**
Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and legal right to execute this Mortgage, and to mortgage and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed.

**45.    AUTHORIZATION**
The execution and delivery of this Mortgage has been duly authorized by the Board of Directors of Mortgagor (if mortgagor be a corporation) and there is no requirement under its certificate of incorporation or its by-laws for consent of shareholders to this transaction.

**46.    NO ORAL CHANGES** - This Mortgage cannot be changed orally.

**47.    WAIVER OF RIGHTS BY MORTGAGOR**
Mortgagor hereby waives the right to assert a counterclaim in any action or proceeding brought against it by Mortgagee, and waives trial by jury in any action or proceeding brought by either party hereto against the other or in any counterclaim asserted by Mortgagee against Mortgagor, or in any matters whatsoever arising out of or in any way connected with this Mortgage or the Debt.

**48.    MORTGAGEE'S DISCRETION TO EXERCISE CERTAIN RIGHTS**
Whenever pursuant to this Mortgage, Mortgagee exercises any right herein granted to Mortgagee to approve or disapprove or consent or refuse consent or to determine that any arrangement or term is satisfactory or unsatisfactory, it is expressly understood and agreed by Mortgagor that any such exercise or determination shall be in the sole and absolute discretion of Mortgagee and shall be binding and conclusive upon Mortgagor.

**49.    MAILING OF NOTICES**
Any notice, request or demand given or made under this Mortgage shall be in writing and shall be hand delivered or sent Federal Express, United Parcel Services or other reputable nationally recognized overnight courier service by postage prepaid registered or certified mail, return receipt

18

requested, and shall be deemed given (a) when received at the following addresses if hand delivered, (b) one (1) business day after delivery to a nationally recognized overnight courier service, and (c) three (3) business days after being postmarked and addressed as follows if sent by registered or certified mail, return receipt requested:

*If to Provident:*
Provident Bank
400 Rella Blvd., P.O. Box 600
Montebello, New York 10901
Attention: Commercial Loan Dept.

*With a copy to:*
Marianna R. Kennedy, Esq.
Drake, Loeb, Heller, Kennedy, Gogerty, Gaba, & Rodd, PLLC
555 Hudson Valley Avenue, Suite 100
New Windsor, New York 12553

*If to the undersigned:*
152 Broadway Haverstraw NY LLC
c/o Treff & Lowy PLLC
342 Bedford Avenue
Brooklyn, New York 11211

*With a copy to:*
Treff & Lowy PLLC
342 Bedford Avenue
Brooklyn, New York 11211

It being understood and agreed that each party will use reasonable efforts to send copies of any notices to the addresses marked "With a copy to" hereinabove set forth; provided; however, that failure to deliver such copy or copies shall have no consequence whatsoever to the effectiveness of any notice made to any of the undersigned or Provident. Each party to this Mortgage may designate a change of address by notice given, as herein provided, to the other party fifteen (15) days prior to the date such change of address is to become effective.

50.   The Mortgagee agrees to provide to the Mortgagor upon full payment of all sums due to Mortgagee under the Note and hereunder an assignment of this Mortgage to a new lender, provided Mortgagor pays all of Mortgagee's costs of preparation thereof including reasonable attorney's fees and pays any assignment fee Mortgagee may require.

**IT IS EXPRESSLY UNDERSTOOD BY THE MORTGAGOR THAT ALL REFERENCES IN THIS MORTGAGE TO ENFORCING MORTGAGEE'S RIGHTS ARE DEEMED TO INCLUDE, BUT ARE NOT LIMITED TO, MORTGAGEE'S RIGHT TO FORECLOSE BY POWER OF SALE, PURSUANT TO ARTICLE 14 OF THE REAL PROPERTY ACTIONS AND PROCEEDINGS LAW, AS SAME MAY BE AMENDED FROM TIME TO TIME.**

19




D.    UNCHANGED TERMS OF MORTGAGES

All of the terms and conditions of the underlying obligations and the Mortgage referred to above that are not expressly changed in this Agreement shall remain in full effect as if they were stated in this Agreement. If there is any conflict between the terms of the underlying obligations and Mortgages that are modified by this Agreement, with this Agreement, then the terms of this Agreement shall govern the rights and obligations of the parties hereto. By signing this Agreement, Mortgagee and Mortgagor agree to all of the above.

E.    REPRESENTATIONS

The Mortgagor hereby represents, covenants and agrees that there are no offsets or defenses to the aforesaid mortgage or to this Agreement, or to the indebtedness secured thereby or hereby, or to any part thereof.

IN WITNESS WHEREOF, the parties hereto have set their hands and duly executed this Agreement the day and year first above written.

In the Presence of:

PROVIDENT BANK

By: Lawrence F. Zema, Vice President

152 BROADWAY HAVERSTRAW NY LLC

By: Joseph Goldberger, Managing Member

STATE OF NEW YORK          )
                           ) SS.:
COUNTY OF ROCKLAND    )

On the 17th day of September, 2009, before me, the undersigned, a Notary Public in and for said State, personally appeared **Lawrence F. Zema,** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the persons upon behalf of which the individual acted, executed the instrument.

Notary Public

MARIANNA R. KENNEDY
Notary Public, State of New York
No. 02KE5056588
Qualified in Orange County
Commission Expires March 4, 2010

20

STATE OF NEW YORK          )
                           ) SS.:
COUNTY OF ROCKLAND  )

On the 17ᵗʰ day of September, 2009, before me, the undersigned, a Notary Public in and for said State, personally appeared **Joseph Goldberger,** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the persons upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

MARIANNA R. KENNEDY
Notary Public, State of New York
No. 02KE5056588
Qualified in Orange County
Commission Expires March 4, 2010

21



# RIVERSIDE ABSTRACT, LLC
### as Agent for
### Fidelity National Title Insurance Company Of New York

### LOAN POLICY
### SCHEDULE A DESCRIPTION

Title Number: **RANY-4275**                    Policy Number: **273073278716267**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Haverstraw, County of Rockland and State of New York, being more particularly bounded and described as follows:

BEGINNING at a point on the northerly right of way line of Broadway, said point being located at the southwest corner of lands now or formerly Olori & Neuser (Tax Lot 27.37-1-1) and the southeast corner the hereinafter intended to be described parcel;

RUNNING THENCE along said northerly right of way line of Broadway the following four courses and distances:

North 69 degrees 24 feet, 21 inches west 238.65 feet;
North 39 degrees 15 feet, 02 inches, west, 164.13 feet;
On a curve to the left having a radius of 220.02 feet, an arc length of 111.55 feet;
North 68 degrees 17 feet 54 inches west, 102.91 feet;

RUNNING THENCE along the easterly, northerly and westerly line of lands now or formerly of Scaglione (Tax Lots 26.36-1-29, 26.36-1-28, 26.36-1-27 and 26.36-1-26) the following nine courses and distances:

North 22 degrees 15 feet 20 inches east, 60.47 feet,
North 34 degrees 51 feet 20 inches west, 51.20 feet,
North 72 degrees 20 feet 36 inches west, 37.20 feet,
North 79 degrees 00 feet 46 inches west, 43.58 feet,
South 79 degrees 15 feet 55 inches west, 7.50 feet,
North 07 degrees 41 feet 45 inches east, 34.96 feet,
South 70 degrees 20 feet 46 inches west, 49.01 feet,
North 77 degrees 29 feet 21 inches west, 98.06 feet,
South 03 degrees 07 feet 57 inches west, 85.30 feet,

RUNNING THENCE along the easterly right of way line of Samsondale Avenue the following eleven courses and distances:

North 54 degrees 53 feet 21 inches west, 28.99 feet,
North 48 degrees 20 feet 24 inches west, 22.19 feet,
North 48 degrees 22 feet 52 inches east, 4.88 feet,
North 48 degrees 37 feet 06 inches west, 56.75 feet,
North 40 degrees 01 feet 28 inches west, 76.44 feet,
North 23 degrees 12 feet 29 inches west 60.89 feet,
South 64 degrees 21 feet 20 inches west, 4.27 feet,
North 12 degrees 42 feet 14 inches west, 93.33 feet,
North 79 degrees 51 feet 04 inches east, 2.85 feet,
North 13 degrees 32 feet 09 inches west, 15.71 feet,
North 08 degrees 09 feet 17 inches west, 63.70 feet,



# RIVERSIDE ABSTRACT, LLC
### as Agent for
### Fidelity National Title Insurance Company Of New York

### LOAN POLICY
### SCHEDULE A DESCRIPTION

**Title Number: RANY-4275**                    **Policy Number: 273073278716267**

RUNNING THENCE along the lands or formerly of Orange & Rockland Utilities, Inc. (Tax Lot 26.08-2-39 and 27-05-1, the following seven courses and distances:

On a curve to the left having a radius of 450.00 feet, an arc length of 96.62 feet;
North 77 degrees 50 feet 21 inches east 566.39 feet;
On a curve to the right having a radius of 360.00 feet, an arc length of 180.31 feet;
South 73 degrees 27 feet 49 inches east 57.01 feet;
On a curve to the left having a radius of 300.00 feet, an arc length of 122.94 feet;
North 83 degrees 03 feet 21 inches east, 43.33 feet;
North 82 degrees 54 feet 51 inches east 211.86 feet;

RUNNING THENCE along the westerly and southerly line of Lot 2 the following ten (10) courses and distances:

South 08 degrees 35 feet 10 inches east, 199.63 feet;
On a non-tangent curve to the right having a radius of 188.00 feet, an arc length of 162.23 feet with a chord bearing and distance of south 04 degrees 11 feet 55 inches west, 157.24 feet;
South 61 degrees 05 feet 00 inches east, 20.22 feet;
South 49 degrees 06 feet 00 inches west, 14.29 feet;
South 40 degrees 54 feet 00 inches east, 157.39 feet;
North 48 degrees 49 feet 05 inches east, 42.52 feet;
North 09 degrees 49 feet 05 inches west, 105.55 feet;
North 37 degrees 24 feet 10 inches east, 107.00 feet;
North 81 degrees 22 feet 05 inches east, 113.29 feet;
North 16 degrees 38 feet 10 inches east 143.53 feet;

RUNNING THENCE along the line of other lands now or formerly of Orange & Rockland Utilities, Inc. (Tax Lot 27.05-2-6) the following five (5) courses and distances:

1.    South 45 degrees 00 feet 00 inches east, 161.00 feet;
2.    South 44 degrees 24 feet 40 inches west, 38.06 feet;
3.    South 07 degrees 57 feet 20 inches east, 58.25 feet;
4.    South 40 degrees 00 feet 56 inches east, 274.25 feet;
5.    South 39 degrees 25 feet 35 inches west, 197.29 feet;

RUNNING THENCE along the northerly line of land now or formerly of the Village of Haverstraw (Tax Lot 27.37-1-32, 27.37-1-31, 27.37-1-30, 27.37-1-29, 27.37-1-28, 27.37-1-26) and the northerly line of lands now or formerly of Tor Avenue Realty Corp. (Tax Lot 27.37-1-4) the following two (2) courses and distances:

1.    South 88 degrees 01 feet 30 inches west, 248.91 feet;
2.    North 72 degrees 53 feet 00 inches west, 331.29 feet;



# RIVERSIDE ABSTRACT, LLC

### as Agent for
### Fidelity National Title Insurance Company Of New York

### LOAN POLICY
### SCHEDULE A DESCRIPTION

Title Number: **RANY-4275**                          Policy Number: **273073278716267**

RUNNING THENCE along the westerly line of lands now or formerly of Tor Avenue Realty Corp. (Tax Lot 27.37-1-4) and Olori and Neuser (Tax Lot 27.37-1-1) the following three (3) courses and distances:

1. South 24 degrees 17 feet 07 inches west, 387.42 feet;
2. North 65 degrees 42 feet 53 inches west, 6.00 feet;
3. South 24 degrees 17 fee 07 inches west, 49.04 feet to the point or place of BEGINNING.

CONSISTING OF 924,693 square feet of land.

TOGETHER with an easement for Ingress and egress over lands now or formerly of Orange & Rockland Utilities, Inc. (Tax Lots 26.08-2-39, 27.05-1-2-27.05-2-6) as recited in Liber 946, page 960.

Subject to the following easements:

A.    Right of way granted to Orange & Rockland Utilities, Inc. and New York Telephone Company as recited in Liber 1001, page 329.

B.    Sanitary Sewer Easement to the Joint Regional Sewerages Board as recited in Liber 982, Page 967.

C.    Easement to the Village of Haverstraw dated August 19, 1968.

Also, subject to a proposed utility easement to Admirals Cove Haverstraw, LLC (Tax Lot 27.05-2-1.1) further bounded and described as follows:

BEGINNING at a point on the northerly right of way line of Broadway said point being distant North 69 degrees 24 feet 21 inches west, 163.48 feet as measured in a northwesterly direction along said northerly right of way line of Broadway, from a point on said northerly right of way line of Broadway located at the southwest corner of lands now or formerly of Olori & Neuser (Tax Lot 27.37-1-1);

RUNNING THENCE North 69 degrees 24 feet 21 inches west, 22.76 feet along said northerly right of way line of Broadway;

RUNNING THENCE thru Lot 1 the following five (5) courses and distances:

1. North 49 degrees 06 feet 00 inches east, 226.14 feet;
2. North 40 degrees 54 feet 00 inches west, 15.00 feet;
3. North 49 degrees 06 feet 00 inches east, 450.00 feet;
4. North 40 degrees 54 feet 00 inches west, 5.00 feet;
5. North 49 degrees 06 feet 00 inches east, 93.91 feet;

RUNNING THENCE along the westerly line of Lot 2 the following three (3) courses and directions:



# RIVERSIDE ABSTRACT, LLC

### as Agent for
### Fidelity National Title Insurance Company Of New York

**LOAN POLICY**
**SCHEDULE A DESCRIPTION**

Title Number: **RANY-4275**                         Policy Number: **273073278716267**

1.   on a non-tangent curve to the right having a radius of 188.00 feet, an arc length of 46.09 feet, with a chord bearing and distance of South 21 degrees 53 feet 47 inches west, 45.97 feet;
2.   South 61 degrees 05 feet 00 inches east, 20.22 feet;
3.   South 49 degrees 06 feet 00 inches west, 14.29 feet;

THENCE South 49 degrees 06 feet 00 inches west, 665.99 feet thru Lot 1 to the point or place of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as Section 27.5 Block 2 Lot 1 and also known as 152 Broadway.

Schedule A Description Page 4 of 4



**FILED**

STATE OF NEW YORK

COUNTY OF ROCKLAND

OCT 07 2009

ROCKLAND COUNTY
CLERK'S OFFICE

} SS.:

**255 AFFIDAVIT MORTGAGE
MODIFICATION AND EXTENSION
AGREEMENT**

Joseph Goldberger, Managing Member, deposes and says that he is familiar with the following facts:

1.    That a certain Mortgage Modification and Extension Agreement dated September 17, 2009 was entered into between PROVIDENT BANK, as mortgagee, and 152 BROADWAY HAVERSTRAW NY LLC, as mortgagor, and is to be recorded simultaneously herewith, with regard to the following mortgage:

a.    Mortgage dated August 18, 2008 made by Mortgagor to Jay Kimmel, as nominee for Taron Partners LLC, in the principal sum of $5,000,000.00 and recorded on September 17, 2008 in the Rockland County Clerk's Office as Instrument Number 2008-42231, which Mortgage is being assigned to mortgagee by Assignment of Mortgage dated September 17, 2009 and intended to be recorded simultaneously herewith. The principal sum now due and owing on such mortgage is $3,534,000.00.  *2009-36469*

2.    That no new money is being advanced under the Mortgage Modification and Extension Agreement.

3.    That this affidavit is made pursuant to Section 255 of the Tax Law of the State of New York for the purpose of claiming exemption from any additional tax on recording of said Assignment.

_____
Joseph Goldberger

Sworn to before me this
17th day of September, 2009.

_____
Notary Public

MARIANNA R. KENNEDY
Notary Public, State of New York
No. 02KE5056588
Qualified in Orange County
Commission Expires March 4, 2010