# EXHIBIT E

1

2      UNITED STATES BANKRUPTCY COURT
       SOUTHERN DISTRICT OF NEW YORK
3      ----------------------------------------X
       BROADWAY EQUITY HOLDINGS, LLC,
4
                                  Chapter 11
5                                 Case No.
                                  17-22242 (RDD)
6
                                  Debtor.
7      ----------------------------------------X
       BROADWAY EQUITY HOLDINGS, LLC,
8
                                  PLAINTIFF,
9
                                  Adversary
10                                Case No.
                                  17-8215 (RDD)
11            -against-

12     152 BROADWAY HAVERSTRAW NY, LLC, BLUE
       BEVERAGE GROUP, INC., JOSEPH GOLDBERGER,
13     TOBY WEINBERGER, MFT HOLDINGS, LLC, ESTATE
       OF JENO GUTTMAN, RYVKIE GOLDBERGER, LAND
14     TRACK TITLE AGENCY, LLC, VILLAGE OF
       HAVERSTRAW RECEIVER OF TAXES, COMMISSIONER
15     OF FINANCE OF THE COUNTY OF ROCKLAND, NEW
       YORK STATE DEPARTMENT OF TAXATION AND
16     FINANCE, "JOHN DOE NO. 1" through "JOHN DOE
       NO 10", and said names being fictitious, it
17     being the intention of Plaintiff to
       designate all persons, partnerships,
18     corporations, or other entities in
       possession of the premises, as tenant or
19     otherwise any/or all persons or entities
       having or claiming an interest in said
20     premises,

21                                DEFENDANTS.
       ----------------------------------------X
22     (Caption continues)
                         DATE:  May 7, 2018
23                       TIME:  10:28 A.M.

24

25            (DEPOSITION of JUDY MINSTER)

1                    J. MINSTER

2     payment demand.

3                    Every note is different.  If

4     there is nothing to settle, we will start

5     foreclosure.  Every note is different.

6          Q.    My question was more specific,

7     what have you done to service this note?

8                    MR. RUBIN:  Objection to form.

9          A.    To service this note I was

10    involved in sending a letter for payment

11    through our attorney, and no payments were

12    made on this loan to date, and I was

13    involved with speaking with counsel, we

14    were going to pursue a foreclosure case.

15                   We started a foreclosure case

16    and they defaulted on the loan, we filed

17    for bankruptcy.  I keep records of

18    documents.

19         Q.    When Mr. Wertzberger asked you

20    about servicing this loan, did he give you

21    any documents?

22         A.    Yes, he came to me with

23    whatever documents he had at the time.

24         Q.    Do you know what those

25    documents were?

1                    J. MINSTER

2          A.    He gave me the operating

3    agreement, the note, some other papers, I

4    don't remember what.  He gave me a folder

5    and I put it together with all the other

6    original notes and notes we have.

7          Q.    Where did you put it?

8          A.    In my desk.

9          Q.    Where is that?

10          A.    11 Ocean Parkway.  At the time

11    it wasn't, but that's where it is now.

12          Q.    Where was it at the time?

13                MR. RUBIN:  Objection to form.

14          A.    My office on 38th Street.

15          Q.    Do you know if he gave you the

16    original operating agreement?

17                MR. RUBIN:  Objection to form.

18          A.    I believe so.

19          Q.    Do you know if he gave you the

20    original note?

21          A.    Just to put context to your

22    answer, I don't recall looking through the

23    documents to see what was original or what

24    wasn't, but when I was preparing for this

25    case I did see the original operating

1                    J. MINSTER

2    agreement and original signature in my

3    file, so that's how I knew I had it at the

4    time.

5                    I looked through so many

6    packages, I don't remember if it was

7    original or not, but the operating

8    agreement I saw recently so I knew it would

9    make sense to me that I got the original at

10   the time.

11        Q.    But you are not sure if you got

12   the original note?

13        A.    I didn't say not sure, I said I

14   don't remember.  Wells Fargo would send me

15   a package, I would file it.  I don't look

16   at each signature and remember, but being

17   that I prepared for this deposition today,

18   I did review the files and I saw the

19   operating agreement, so I was able to

20   answer yes, I saw it today.

21                    I didn't see the original note

22   when I did my reviews, so I don't remember

23   if it was the original or if it wasn't.  I

24   have no reason to believe it wasn't the

25   original.  He gave me whatever I had and I

1                    J. MINSTER
2    had reason to believe it was the original,
3    but I don't recall if I saw it at the time
4    four years ago.  I would have filed it in
5    the normal course of business, and that's
6    my answer.
7         Q.    How about the original
8    mortgage, did he give that to you?
9         A.    I believe the original mortgage
10    was being held by Mark Kranz, who arranged
11    for recording of the mortgage.  I don't
12    remember, but in my original files I didn't
13    have the mortgage.
14         Q.    What do you have in your file?
15              MR. RUBIN:  Objection to form.
16         A.    I answered it when you asked me
17    how I prepared for the deposition and which
18    files I looked at.  I told you I saw the
19    341 notice, the affidavits I signed.  I
20    think I have copies of some of the wires.
21    I don't really remember.
22              I have all the bank statements.
23    I have the invoices for the debtors that we
24    owe money.  I have some assignments.  There
25    may be more.  I don't remember.  That's the

```
 1                    J. MINSTER
 2    gist of it.
 3         Q.    Do you recall ever seeing the
 4    original note in your possession?
 5              MR. RUBIN:  Objection, asked
 6          and answered.
 7         A.    I answered that in length, so
 8    you could reread my answer.
 9         Q.    Could you answer my question?
10         A.    You could read it back.  It is
11    the same answer.  Nothing changed.  You
12    could read my answer when he asked me the
13    same question, I would like to answer it
14    the same way again.
15         Q.    I didn't ask you the same
16    question.
17              MR. RUBIN:  Do it again for him
18          for the best of your recollection.
19         A.    I was given a package by Joel
20    with a note and operating agreement and
21    assignments.  And when he approached me if
22    I wanted to be managing member and service
23    this note, and at the time I don't remember
24    looking through the file to see if it was
25    an original operating agreement, original
```

```
 1                    J. MINSTER
 2    note, original assignments.  I don't
 3    recall.  I got the package, normal course
 4    of business, I had no reason to believe it
 5    wasn't the original.
 6              And review from my deposition
 7    today, the way I could answer definitively
 8    that it was the original operating
 9    agreement was because I actually saw it
10    between the past 15 to 20 days and I didn't
11    see the original note, so I don't remember
12    in September of 2014 when I was approached
13    by Joel and given the file if it was the
14    original, if it was not, the same way I
15    wouldn't remember if it was the original
16    operating agreement or not.  I have no way
17    to remember such details going back four
18    years at the time.
19         Q.    So, my question was a little
20    different.
21              I understand you don't recall
22    when you were given the original file,
23    whether you were given the original or not,
24    I understand that.
25              I'm asking you if any time
```

1                    J. MINSTER

2    subsequent to being given the original

3    file, have you ever seen the original note?

4         A.    I may have seen it in 2014 when

5    it was given to me, but I don't remember.

6         Q.    Other than that, have you seen

7    it since then?

8              MR. RUBIN:  Objection, asked

9         and answered.

10         A.    I may have.  I may have looked

11    to the file.  I don't remember.  The same

12    way I would have pulled out any one of the

13    60 files.  I don't remember.  It is not

14    something that my brain has the capacity to

15    remember.  Sorry.

16              MR. FLEISCHMANN:  Let's mark

17         this.

18              (Whereupon, document was marked

19         as Minster Exhibit 1 for

20         identification.)

21         Q.    Could you just look at the

22    document and let me know when you are

23    ready.

24         A.    You want me to read the whole

25    document?  I'm ready.

1                    J. MINSTER
2         Q.    Could you look at page 17?
3         A.    Okay.
4         Q.    You see there is a signature
5    box that says Judy Minster, is that your
6    signature?
7         A.    Yes.
8         Q.    Did you review the responses in
9    this document prior to signing this?
10        A.    Yes.
11        Q.    Could you look at number ten on
12   page 13?
13        A.    Yes.
14        Q.    This is a question about who is
15   responsible for preserving documents, among
16   other things.
17               Do you see the answer?
18               I will read the last line,
19   "Further, as plaintiff's attorney in
20   connection with a note of mortgage, Mark
21   Kranz is responsible for maintaining and
22   preserving documents and records concerning
23   the note and mortgage."
24               Is that an accurate statement?
25        A.    I don't know what context you

```
 1                    J. MINSTER
 2   are reading in.  Read the whole thing.
 3        Q.     Read it to yourself and tell me
 4   if it is an accurate statement.
 5        A.     "Plaintiff objects to
 6   interrogatory number ten on the ground that
 7   it is vague and ambiguous.  Subject to and
 8   without waiving the foregoing objections,
 9   plaintiff states that as its managing
10   member, Judy Minster is responsible for
11   maintaining and preserving documents and
12   records on behalf of the plaintiff.
13             "Further, as plaintiff's
14   attorney in connection with a note and
15   mortgage, Mark Kranz is responsible for
16   maintaining and preserving documents and
17   records containing the note and mortgage."
18             What is your question?
19        Q.     Is that an accurate response?
20             MR. RUBIN:  Objection.  You are
21        asking for a legal conclusion.
22             MR. FLEISCHMANN:  I object to
23        your objection as coaching your
24        witness.
25             MR. RUBIN:  You read a
```

1          J. MINSTER

2          document, it incorporated prior

3          objections, it is a legal document,

4          it is a proper objection.

5          MR. FLEISCHMANN:  Please stop

6          making speaking objections.

7          A.     Could I see the interrogatory

8    number ten that I could say because I don't

9    remember the interrogatory by heart.

10         Q.     Right above it.

11         A.     My knowledge from me reading

12   this, it says I'm responsible and the

13   attorney is responsible for keeping

14   documents.  I don't know what to answer

15   you.

16         Q.     Take whatever time you need to

17   answer the question.

18         MR. RUBIN:  She answered the

19         question.

20         A.     I wouldn't know what to answer.

21   This was prepared by counsel and I don't

22   have an answer for you on this question.

23         Q.     To your knowledge, is Mr. Kranz

24   responsible for maintaining and preserving

25   documents concerning the note and mortgage?

1                    J. MINSTER

2              MR. RUBIN:  Objection, calls

3          for legal conclusion.

4                    You may answer.

5          A.    I can't answer.

6          Q.    You have no knowledge one way

7    or the other?

8              MR. RUBIN:  Objection, asked

9          and answered.

10             MR. FLEISCHMANN:  She did not

11         answer the question once.

12             MR. RUBIN:  You are asking for

13         a legal conclusion, you are asking

14         the wrong witness.

15         A.    I can't answer the question.

16         Q.    Could you look at page 17

17   again?

18         A.    Yes.

19         Q.    Do you see right above your

20   signature block it says as factual content?

21         A.    Yes.

22         Q.    What does that mean?

23         A.    That I'm signing as to the

24   factual content, as to whatever is a fact

25   here.

```
 1                    J. MINSTER
 2        Q.    Now I'm asking a different
 3   question.
 4        A.    That's what I assume it means.
 5        Q.    Who is responsible for
 6   maintaining and preserving documents and
 7   records containing the note and mortgage?
 8             MR. RUBIN:  Objection, asked
 9        and answered and calls for legal
10        conclusion.
11        A.    I answered you earlier that I
12   was given the file, and you asked me about
13   the mortgage and I told you it was sent for
14   recording, and Mark Kranz was handling
15   that, as far as I remember.
16             You asked me regarding the note
17   and I answered, you asked me regarding the
18   document and I told you all the documents I
19   may have, and now you are asking documents
20   I keep record of, all those that I
21   mentioned in the past.
22             MR. FLEISCHMANN:  That wasn't
23        my question.
24             Could you read my question
25        back.
```

```
 1                    J. MINSTER
 2               (Whereupon, the requested
 3          portion was read back by the
 4          reporter.)
 5               MR. RUBIN:  Objection, asked
 6          and answered.
 7                    Go ahead.
 8                    And calls for legal conclusion.
 9                    Go ahead.
10          A.    I listed the documents that I
11     held as managing member of Broadway Equity
12     Holdings, LLC and the documents I have in
13     possession.  I don't understand the
14     question.  I'm sorry.  We could move on or
15     you could ask it again.
16               MR. FLEISCHMANN:  Could you
17          read the question back.
18               MR. RUBIN:  We did that
19          already.
20               (Whereupon, the requested
21          portion was read back by the
22          reporter.)
23               MR. RUBIN:  Objection, asked
24          and answered.
25                    Objection to the form of the
```

```
 1                    J. MINSTER
 2          question, calls for legal conclusion.
 3          A.    I don't know.  I told you all
 4     the documents I have.  I don't know what
 5     you are trying to ask.
 6          Q.    Were you present when the note
 7     and mortgage was allegedly signed?
 8                MR. RUBIN:  Objection to form.
 9          A.    No, I was not.
10          Q.    Do you know who was?
11                MR. RUBIN:  Objection to form.
12          A.    No.
13          Q.    Were you a party to the
14     negotiations that led up to the alleged
15     signing of the note of mortgage?
16                MR. RUBIN:  Objection to the
17           form of the question.
18          A.    No.
19          Q.    Were you present when the note
20     and mortgage was notarized?
21                MR. RUBIN:  Objection.
22          A.    No.
23          Q.    Do you know who notarized the
24     note and mortgage?
25                MR. RUBIN:  Objection.
```

1                    J. MINSTER

2                C E R T I F I C A T E

3

4    STATE OF NEW YORK        )
                              :  SS.:
5    COUNTY OF KINGS          )

6

7            I, SARAH FRIEDMAN (Pages 1-109, 172),

8    a Notary Public for and within the State of

9    New York, do hereby certify:

10           That the witness whose examination is

11   hereinbefore set forth was duly sworn and

12   that such examination is a true record of

13   the testimony given by that witness.

14           I further certify that I am not

15   related to any of the parties to this

16   action by blood or by marriage and that I

17   am in no way interested in the outcome of

18   this matter.

19           IN WITNESS WHEREOF, I have hereunto

20   set my hand this 16th day of May 2018.

21

22                    *Sarah Friedman*

23           _____

                      SARAH FRIEDMAN

24

25

```
 1                    J. MINSTER

 2             C E R T I F I C A T E

 3
    STATE OF NEW YORK      )
 4                        :  SS.:
    COUNTY OF KINGS        )
 5

 6         I, KAREN R. ANIBOLI-KOPANYI (Pages

 7    109-171, 173), a Notary Public for and

 8    within the State of New York, do hereby

 9    certify:

10         That the witness whose examination is

11    hereinbefore set forth was duly sworn and

12    that such examination is a true record of

13    the testimony given by that witness.

14         I further certify that I am not

15    related to any of the parties to this

16    action by blood or by marriage and that I

17    am in no way interested in the outcome of

18    this matter.

19         IN WITNESS WHEREOF, I have hereunto

20    set my hand this 16th day of May 2018.

21

22

                  _____
24                    KAREN R. ANIBOLI-KOPANYI

25
```